[No. C000188. Third Dist. Aug. 11, 1987.]

CALIFORNIA CASUALTLY INDEMNITY EXCHANGE, Plaintiff and Respondent, v.
LAUREN PETTIS et al., Defendants and Appellants.

1598

## COUNSEL

Ian L. Mattoch, Richard F. Kelley and Dennis K. Ferm for Defendants and Appellants.

Kroloff, Belcher, Smart, Perry & Christopherson and Orlie L. Curtis for Plaintiff and Respondent.

## OPINION

**SPARKS, J.**—The question in this case is whether uninsured motorist benefits may be combined or "stacked" to satisfy the total damages alleged to have been incurred by the insureds. We are called upon to resolve a conflict of laws question and to construe out-of-state insurance clauses of California automobile liability policies for an accident in Hawaii. We conclude that California law governs and that the insureds are not entitled under their policies to stack the uninsured motorists coverage.

Plaintiff California Casualty Indemnity Exchange (California Casualty) is a California corporation engaged in the business of insuring automobiles. Defendants Lauren and Patricia Pettis and Charles and Linda Swimley are California residents who separately purchased policies of automobile insurance from California Casualty. While driving a rental car in Hawaii on a joint vacation the defendants were all involved in a collision with an uninsured motorist. Defendants seek to apply Hawaiian law in order to make claims against their uninsured motorist coverage in excess of the policy limits stated in their policies and approved by California law. In this declaratory relief action the trial court applied California law to the insurance policies and found in favor of California Casualty. Defendants appeal asserting that they should be permitted to "stack" their uninsured motorist coverage which is permitted in Hawaii but precluded in California. Defendants Swimley also assert they are entitled to $25,000 per person limits rather than the $15,000 limits stated in their insurance policy. Because we agree with the trial court, we shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts are not in dispute. California Casualty is an insurance company that insures many of the school teachers in the Stockton area. Defendants are teachers who purchased automobile insurance from California Casualty. The policy which was issued to Charles and Linda Swimley provided uninsured motorist coverage in the amount of $15,000 per injury and $30,000 maximum per incident. The policy issued to Lauren and Patricia Pettis provided uninsured motorist benefits in the amount of $25,000 per injury and $50,000 maximum per incident. Each of the defendant couples insures more than one vehicle under their policy of insurance.

In June 1982, the defendants vacationed together in Hawaii. They rented a car which was covered, pursuant to Hawaiian law, by a policy of no-fault insurance issued by Liberty Mutual Insurance Company. The policy provided maximum no-fault benefits of $15,000 per person. The defendants were involved in a collision with an uninsured driver. All of the defendants

recovered payments under the no-fault insurance provided by Liberty Mutual, and three of the defendants recovered the policy limits under that insurance. The defendants returned to California where they seek additional compensation under the uninsured motorist coverages of their insurance policies with California Casualty. Each policy issued to defendants by California Casualty contained this provision governing out-of-state insurance: "If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a nonresident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the [California Casualty's] liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss."

California Casualty brought an action for declaratory relief seeking a determination of the parties' rights and liabilities. Although the parties do not agree whether, and the extent to which, defendants have suffered compensable injuries, that is not a question which is presented in this case.[1] There were three primary issues presented to the trial court for resolution. The first related to defendants' claimed right to "stack" the California and Hawaiian policies. ▮ In Hawaii a person is permitted to stack uninsured motorist coverage where he insures more than one vehicle. Thus the actual policy limits under Hawaiian law are the stated limits multiplied by the number of insured cars. (*Allstate Ins. Co.* v. *Morgan* (1978) 59 Hawaii 44 [575 P.2d 477].) California is what has been called a nonstacking state. (*Rudder* v. *Farmers Ins. Exchange* (1980) 107 Cal.App.3d 158, 162 [165 Cal.Rptr 562, 21 A.L.R.4th 205]; *Allstate Ins. Co.* v. *Shmitka* (1970) 12 Cal.App.3d 59, 68-69 [90 Cal.Rptr. 399].) ▮ Defendants contend that since their accident occurred in Hawaii they are entitled to the benefit of Hawaiian law and may stack their uninsured motorist benefits. ▮ The second issue concerned the limits of the policy issued to the Swimleys.

---

[1] California Casualty characterizes this as "a minor accident with minor injuries," and states that this was "an accident with almost no visible injury." However, California Casualty does not seek a determination of the compensability of defendants' injuries; that is a matter which will be settled through settlement or arbitration. The purpose of this litigation was to determine the amount of uninsured motorist coverage available to the defendants under which they make their claims.

Under Hawaiian insurance law, any liability policy delivered, issued for delivery, or renewed in Hawaii with respect to any motor vehicle registered or principally garaged in Hawaii must include uninsured motorist coverage to the extent of the Hawaiian minimum bodily injury or death liability limits unless the insured rejects such coverage in writing. (Hawaii Rev. Stats. § 431-448, now § 431-448, subd. (a).) At the time in question the Hawaiian minimum liability limits for a no-fault policy were $25,000 (they are now $35,000). (Hawaii Rev. Stats. §§ 287-7, 294.10, subd. (a); but see §§ 287-25, 287.26 [limits of $10,000/person, $20,000/accident for owners and drivers].) The Swimleys contend that pursuant to this provision their uninsured motorist limits must be deemed to be $25,000 rather than the $15,000 limits of their policy. The third question presented to the trial court was whether California Casualty should be allowed to set off defendants' no-fault recoveries against its uninsured motorist coverage.

The trial court determined that California law applies in determining the rights of the parties. It held that defendants may not stack their uninsured motorist limits. It further determined that the Swimleys are limited to the $15,000 limits of their policy. Finally, the court determined that California Casualty may not set off the no-fault benefits against its liability. Defendants appeal. California Casualty has not appealed from the judgment insofar as it denies the set off.

## DISCUSSION

### I. *Stacking of Benefits.*

The question whether uninsured motorist benefits may be stacked has frequently arisen in this country. (See, e.g., Annot., Combining or "Stacking" Uninsured Motorist Coverages Provided in Single Policy Applicable to Different Vehicles of Individual Insured (1983) 23 A.L.R.4th 12; Annot., Combining or "Stacking" Uninsured Motorist Coverages Provided in Separate Policies Issued by Same Insurer to Different Insureds (1983) 23 A.L.R.4th 108; Annot., Combining or "Stacking" Uninsured Motorist Coverages Provided in Policies Issued by Different Insurers to Same Insured (1983) 21 A.L.R.4th 211.) Not infrequently the question has surfaced in choice-of-law situations, and has even reached the United States Supreme Court in that context. (*Allstate Ins. Co.* v. *Hague* (1981) 449 U.S. 302 [66 L.Ed.2d 521, 101 S.Ct. 633].)[2] In these cases different states are generally

---

[2] In *Hague,* the United States Supreme Court did not consider the soundness of the state court's choice-of-law decision. Instead, it addressed only the question of whether the full faith and credit or the due process clause of the federal Constitution precluded the choice-of-law decision made in the court below. (449 U.S. at p. 307 [66 L.Ed.2d at p. 525].) The United States Constitution provides a minimal standard in choice-of-law matters. (*Ibid.*) In this case

said to be either stacking or nonstacking jurisdictions, and the parties, and even some courts, have assumed that resolution of the conflict of laws question necessarily resolves the issue. The characterization of the issue as a pure conflict of laws question is not entirely accurate. ■ In the absence of some overarching statutory provision, the rights and liabilities under an insurance policy spring from the contractual relationship of the parties. (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 18 [123 Cal.Rptr. 288, 538 P.2d 744].) A primary task in any insurance coverage case is to determine the validity and meaning of the particular policy provisions at issue. The choice of law may affect this determination because either statutorily or judicially the states may have imposed certain obligations, invalidated certain provisions, or interpreted certain language in a policy to have a certain meaning. The choice of law determines the jurisdiction whose laws will be looked to in considering the validity and meaning of the policy at issue, but the particular policy must still be considered to determine the contractual rights of the parties.

In this sense it is not accurate to label a state as a stacking or nonstacking jurisdiction simply because in some cases the state has permitted or precluded stacking. A state which has permitted or precluded stacking in certain circumstances under particular policy provisions will not necessarily reach the same result in different circumstances or with different policy language. In order to determine the effect of a state's law on the validity and meaning of a contract of insurance it is necessary to consider the wording of the state statutes, the reasoning employed by that state's courts and the circumstances of the particular case. It would serve no purpose here to attempt to recount all of the different reasons state courts have permitted or precluded stacking of insurance benefits. There are only two states whose laws might apply to this case and we will limit our consideration to the laws of those states.

We turn first to the law of Hawaii. The stacking issue reached the Hawaiian Supreme Court in *Walton* v. *State Farm Mutual Automobile Ins. Co.* (1974) 55 Hawaii 326 [518 P.2d 1399]. In that case the plaintiff was injured by an uninsured motorist while he was a passenger in a nonowned car. The plaintiff recovered uninsured motorist benefits from the driver's insurer, and then sought additional recovery under his own policy. The insurer contended that an "other insurance" clause in the policy precluded such recovery. The court concluded that under Hawaii's statutory law the other insurance

we are not concerned with whether California has a sufficient contact to the case that its law may be applied, for it clearly does. We are concerned with whether a California court should yield to and apply the law of another state in these circumstances. The decision in *Hague* is of no assistance in resolving this question.

clause was invalid, and the plaintiff was entitled to recovery under his policy.

The issue arose in a different context in *Allstate Ins. Co.* v. *Morgan, supra,* 59 Hawaii 44 [575 P.2d 477]. There the defendant had a policy of insurance under which he insured three vehicles and for which he paid three separate premiums. When he was injured by an uninsured motorist the defendant wished to stack his coverage. The Hawaii court concluded that he could do so because, unless rejected in writing, insurance "with respect to any motor vehicle registered or principally garaged" in Hawaii was required to provide uninsured motorist coverage. The Hawaiian court concluded that this meant that each insured vehicle carried coverage which could be stacked. This conclusion was thus a matter of interpreting a particular Hawaiian insurance policy in light of Hawaiian statutory requirements.[3]

 The California Legislature has provided that California insurance policies upon any motor vehicle principally used or principally garaged in this state must provide uninsured motorist coverage unless agreed otherwise in writing. (Ins. Code, § 11580.2, subd. (a).) However, our Legislature has provided that California uninsured motorist coverage does not apply where the insured is injured "while in or upon or while entering into or alighting from a motor vehicle other than the described motor vehicle if the owner thereof has insurance similar to that provided in this section." (Ins. Code, § 11580.2, subd. (c)(2).) The Legislature has also provided that, subject to subdivision (c)(2) of that section, the policy "may provide that if the insured has insurance available to the insured under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and such damages shall be prorated between the applicable coverages as the limits of each coverage bear to the total of such limits." (Ins. Code, § 11580.2, subd. (d).) Conjoined, these statutory provisions authorize the barring of stacking in circumstances permitted in Hawaii. Thus, Insurance Code section 11580.2, subdivision (c)(2) specifically precludes the stacking of benefits in the situation presented in *Walton* v. *State Farm Mutual Automobile Ins. Co., supra,* 55 Hawaii 326 [518 P.2d 1399]. Subdivision (d) of that section permits and validates an "other insurance" clause to be included in a California policy to preclude stacking of benefits in the situation represented in *Allstate Ins. Co.* v. *Morgan, supra,* 59 Hawaii 44 [575 P.2d 477]. Pursuant to these

---

[3] The decision in the *Morgan* case is believed to place Hawaii in the list of stacking states. However, under Hawaiian law an insured may reject uninsured motorist coverage in writing. (Hawaii Rev. Stats. § 431-448, subd. (a).) Presumably an insured could accept uninsured motorist coverage for one car, but reject it in writing with respect to other cars in exchange for a lower premium. Nothing in the decision would compel the conclusion that the insured had benefits which could be stacked in such a case.

provisions stacking of uninsured motorist benefits is not permitted in California. (*Rudder* v. *Farmers Ins. Exchange, supra,* 107 Cal.App.3d at p. 161; *Allstate Ins. Co.* v. *Shmitka, supra,* 12 Cal.App.3d at pp. 68-69.)

■ A comparison of the California and Hawaii statutes involved reveals that unquestionably it is California and not Hawaiian law which applies to the policies of insurance involved here. The policies were issued and delivered in this state by an insurer incorporated and licensed in this state that does no business in Hawaii, to cover cars which are registered, principally used, and principally garaged in this state, and which could not reasonably have been expected to be used in a place outside of the continental United States such as Hawaii. And as the final frosting on the California cake, the insureds were domiciliaries of this state who reside and work here. Under these circumstances the provisions of Insurance Code section 11580.2 are expressly applicable to the policies in question. In contrast, Hawaiian law applies only to insurance policies "delivered, issued for delivery, or renewed in [Hawaii], with respect to any motor vehicle registered or principally garaged in [Hawaii] . . . ." (Hawaii Rev. Stats. §§ 431-448, subd. (a).) Hawaiian law, by its express terms, does not apply to the policies in question.

Despite the fact that Hawaiian law does not by its terms apply to the insurance policies in question, the defendants would have us look behind the Hawaiian statute to divine a Hawaiian public policy and then apply it in derogation of our own governing statutory law. This we may not do. ■ The Legislature establishes public policy of this state through its statutory enactments and when the Legislature has spoken we are not free to ignore it by speaking with a discordant tongue. (See *Safeway Stores* v. *Retail Clerks etc. Assn.* (1953) 41 Cal.2d 567, 574 [261 P.2d 721].)[4] It would be anomolous, if not outright ludicrous, for a forum court to refuse to apply its state's expressly applicable statutory law and thereby thwart the public policy established by its Legislature in order to fulfill the policy of another jurisdiction derived from statutes which are inapplicable by their terms to the case in question, especially where the second jurisdiction's interest in the case is less significant than that of the forum state. Before a state court should consider rejecting its own statutory law in favor of another jurisdiction's policy, it must appear that the other state has significant contacts

[4] Lest there be any doubt concerning California's public policy in that area, in 1984 the Legislature added subdivision (q) to Insurance Code section 11580.2 to provide: "Regardless of the number of vehicles involved whether insured or not, persons covered, claims made, premiums paid or the number of premiums shown on the policy, in no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to injured persons." (Stats. 1984, ch. 1493, § 2.) This pronouncement reaffirms and reinforces our traditional nonstacking rule.

with the case and an interest in its resolution that outweighs the interest of the forum state. ▮ When the interests of California are weighed against those of Hawaii in this case, the balance overwhelmingly tilts in favor of California.

The defendants were occupying a Hawaiian vehicle when the accident occurred in Hawaii. Hawaii, like California, has a significant interest in regulating motor vehicle insurance within its boundaries. The Hawaii Legislature has provided the means by which Hawaii's interest in such matters may be protected. Under Hawaiian law every motor vehicle registered or principally garaged in that state must carry a policy of no-fault insurance. Unless rejected in writing, a Hawaiian no-fault insurance policy must provide uninsured motorist coverage. (Hawaii Rev. Stats. § 431-448, subd. (a).) The car in which defendants were riding at the time of their accident was covered by a policy of Hawaiian no-fault insurance and the owner of the car had declined uninsured motorist coverage. Hawaiian law and the policy expressed in that law were fully satisfied by the Liberty Mutual insurance policy in effect at the time of the accident. The fact that defendants had additional insurance, whether vehicular or otherwise, was fortuitous for them but is extraneous to the calculus of Hawaii's interest. Hawaii's interest centers on compliance with its own statutory requirements.[5] Once those have been satisfied, Hawaii has little, if any, other interest in this case.

California has the most significant contacts with the case. As we have noted, California Casualty is a California corporation licensed and doing business in California, which conducts no business in Hawaii. The defendants are California domiciliaries who reside and work here and were in Hawaii only temporarily. The vehicles for which defendants purchased insurance are registered, garaged, and principally used in California. The insurance policies at issue were purchased to fulfill California's financial responsibility law. ▮▮ California's more significant contacts to the case and the fact that the insurance policies were purchased in

---

[5] This conclusion may be demonstrated by reference to Hawaiian statutory law. Under Hawaiian no-fault provisions the obligation is upon the owner of a motor vehicle used on Hawaiian public streets to obtain a policy of no-fault insurance. (Hawaii Rev. Stats. § 294-8, subd. (a)(l).) Under Hawaiian financial responsibility law the driver of a vehicle is specifically exempt if the owner of the vehicle has insurance coverage. (Hawaii Rev. Stats., § 287-7, subd. (1).) Another provision in the financial responsibility law states: "Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and the excess or additional coverage shall not be subject to this chapter. With respect to a policy which grants such excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by this chapter." (Hawaii Rev. Stats. § 287-30.) Read together these provisions clearly indicate that the Hawaii Legislature regards its public policy to have been satisfied where the owner of a vehicle obtains the minimum insurance required by its statutory law.

fulfillment of our law rather than Hawaiian law necessarily gives California the greater interest in the resolution of the case.[6]

The conclusion that California law is applicable to the insurance policies involved here comports with the general rule in such matters. The Restatement Second of Conflict of Laws section 193 states: "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship . . . ." As the court explained in *Cunninghame* v. *Equitable Life Assur. Soc. of U.S.* (2d Cir. 1981) 652 F.2d 306: ▮ "In contracts of casualty insurance, . . . the principal location of the insured risk is given particular emphasis in determining the choice of the applicable law. [Citation.] This is so because location has an intimate bearing upon the nature of the risk and the parties would naturally expect the local law of the state where the risk is to be principally located to apply. [Citations.] Moreover, the state where the insured risk will be principally located during the term of the policy has an interest in the determination of issues arising under the insurance contract." (*Id.,* at p. 308, fn. 1.)

A few examples of the application of the rule should suffice. In *Blue Bird Body Co.* v. *Ryder Truck Rental* (5th Cir. 1978) 583 F.2d 717, the plaintiff rented a vehicle from the defendant. The parties were Georgia residents who were insured by Georgia insurers. The vehicle was expected to be used only in Georgia but for unknown reasons the driver of the vehicle drove into Mississippi where he was involved in a collision. The Georgia insurers settled with the Mississippi residents who were injured and then brought an indemnity action to determine which insurer would bear primary responsibility. Under Mississippi law one of the insurers could be held primarily responsible, while under Georgia law they would be required to prorate the loss. The court noted that since the Mississippi residents had been paid for their losses Mississippi had no real concern in the indemnity action. Since

---

[6] California's nonstacking rule is not simply a stingy refusal to permit insureds to obtain full recovery. It reflects a policy choice by our Legislature that, unless expressly rejected, all persons insured under a California policy should have a *minimum* level of uninsured motorist coverage. Insureds are not precluded from purchasing, and paying for, additional insurance should they choose to do so. If they do not purchase additional insurance then their premiums will represent the reduced risk attributable to California's nonstacking rule, as in this case with the multivehicle discounts the defendants received when they insured more than one car. In this manner our Legislature has acted to keep down the cost of compliance with our financial responsibility law while guaranteeing that all persons will be offered the minimum appropriate level of uninsured motorist protection. The realization of this legislative purpose would be thwarted if, based upon some minimal and fortuitous contact with another state, insureds are allowed to reap an unexpected and unpaid for windfall in the level of their insurance coverage.

the contracts were executed in Georgia by Georgia residents that state had the most significant interest in the action and its law was applied. (583 F.2d at p. 723.) In *Tholen* v. *Carney* (5th Cir. 1977) 555 F.2d 479, at page 481, footnote 5, California residents sought to stack their uninsured motorist coverage under Alabama law because the accident occurred there. The court applied California's nonstacking rule because "[t]he plaintiffs are residents of California and the contract of insurance was made in California, with uninsured motorist coverage being afforded to comport with section 11580.2 of California's Insurance Code." In *State Farm Mut. Auto. Ins. Co.* v. *Crockett* (1980) 103 Cal.App.3d 652, at page 655 [163 Cal.Rptr. 206], the court resolved the parties' choice of law dispute by saying: "Appellants' contract with State Farm was executed in California by California residents, and must be interpreted in accordance with the law of this state, . . ."[7]

The decisional law relied upon by defendants is inapposite. In *Stickney* v. *Smith* (5th Cir. 1982) 693 F.2d 563, an insurance policy was purchased in Michigan by a Michigan domiciliary. However, the insured lived and worked in Louisiana and garaged his vehicle there, since he was on indefinite military assignment in that state. Since it was clearly anticipated that the risk would be located in Louisiana it would follow under the rules we have cited that Louisiana law should apply, and the court so held. (See also *Bell* v. *State Farm Mut. Auto. Ins. Co.* (5th Cir. 1982) 680 F.2d 435, 436, which reached the same conclusion on almost identical facts.) In *Parker* v. *State Farm Ins. Co.* (E.D. Pa. 1982) 543 F.Supp. 806, at page 810, the insured purchased his insurance in Maryland, but at the time of the accident in Pennsylvania he was living and garaging his vehicle in Pennsylvania. The court held that since the plaintiff was a Pennsylvania citizen and the risk was principally located in Pennsylvania, that state had a sufficiently strong interest that its law should apply.[8] In each of these cases the state

---

[7] The *Crockett* case involved an uninsured motorist claim by a California resident after a Hawaiian collision. The Hawaiian driver was fully insured under Hawaiian law but he could not be sued because Hawaii's no-fault law abolished tort liability where medical expenses are less than $1,500. The California resident sought to recover uninsured motorist benefits under a California policy issued on his own car. In a declaratory relief action, the trial court held that no uninsured motorist coverage existed under the California policy. Affirming, the Court of Appeal looked to California law to interpret the insurance policy, but looked to Hawaiian law to determine whether the Hawaiian driver could be legally liable to the California resident, which is a prerequisite to recovery under California's uninsured motorist coverage. (103 Cal.App.3d at p. 658.)

[8] The decision in *National Farmers Union* v. *Nodak Mut. Ins.* (N.D. 1981) 528 F.Supp. 1093, at page 1095, upon which defendants place reliance, is actually authority contrary to their position. There the insureds were North Dakota residents who registered their car and purchased their insurance in North Dakota. The accident was in Minnesota. The court held that the insurance policy provided Minnesota no-fault coverage, but that was because of a specific policy provision by which the insurer agreed to provide no-fault coverage if the insured was driving in a state which required it. In determining the validity and effect of the

whose law was found to be applicable had significant contacts with the case and substantial interest in resolution of the issues. That is not the case here. Defendants' transitory visit to Hawaii, and the fact that the accident occurred there, are simply not sufficient to outweigh California's compelling interest in this case.

The California appellate court decision upon which defendants place their primary reliance, *California Casualty Indemnity Exchange* v. *Deardorff* (1984) 157 Cal.App.3d 548 [203 Cal.Rptr. 725], is neither controlling nor persuasive. In that case California residents purchased insurance in California, and were injured in an accident in Minnesota. Minnesota law was applied. However, this was not simply a choice of law decision; it was a matter of enforcing the contractual relationships of the parties. First, the insurer had agreed with the insureds that when they were driving in a state which required insurance different from that in the policy, then the policy would be deemed to provide such insurance. Second, the insurer had agreed with the State of Minnesota, as a condition of providing coverage there, that any policy issued which provided insurance required by Minnesota law would be deemed to provide the required insurance. Minnesota required no-fault insurance for cars driven there and permitted stacking of benefits for both residents and nonresidents when the insurer was licensed to do business in Minnesota. Pursuant to its contractual agreements with the insureds and with Minnesota, the insurer was required to permit the stacking of benefits. The California Court of Appeal simply refused to apply California law in the guise of a choice of law decision to nullify the insurer's contractual obligations. (157 Cal.App.3d at p. 552.)

The circumstances present in *Deardorff* are obviously not present in this case. California Casualty does not conduct any business in Hawaii, and has not entered into any contractual agreement with that state as a condition of issuing insurance there. The Hawaii Legislature has extended the provisions of its law only to insurance policies delivered, issued for delivery, or renewed in Hawaii, and with respect to motor vehicles registered or principally garaged in Hawaii. (Hawaii Rev. Stats. § 431-448, subd. (a).) The policies in question here were not delivered, issued for delivery, or renewed in Hawaii, and were not issued with respect to vehicles registered or principally garaged in Hawaii (or for that matter, even expected to be used or operated in that state). It is thus clear that Hawaii has not attempted to impose duties upon California Casualty or to regulate the policies in question either by statute or by agreement with California Casualty.

The policies at issue here contained an out-of-state insurance provision identical to that involved in *Deardorff,* which is hardly surprising since

policy the court applied North Dakota law because of that state's more significant relationship to the case.

California Casualty was the plaintiff in that case as well. As we have recounted, that provision states in relevant part that if a nonresident is required by law to maintain vehicle insurance for the operation of a vehicle in that state and "such insurance requirements are greater than the insurance provided by the policy, the limits of [California Casualty's] liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, *but only to the extent required by such law* and only with respect to the operation and use of a motor vehicle in such state or province . . . ." (Italics added.) Under Hawaiian law the owner of a vehicle is required to obtain and maintain a policy of no-fault insurance, which must include liability coverage. (Hawaii Rev. Stats., §§ 294-8, subd. (a)(1), 294-9, subd. (a), 294-10.) Under Hawaiian financial responsibility law the driver of a vehicle is exempt if the owner of the vehicle maintains insurance on the vehicle. (Hawaii Rev. Stats. § 287-7, subd. (1).) The owner of the vehicle in which defendants were riding at the time of their accident maintained a policy of Hawaiian no-fault insurance on the vehicle and defendants were therefore not required by Hawaiian law to maintain insurance with respect to their operation and use of the vehicle. The quoted policy provision, by its clear and unambiguous terms, did not operate to give defendants greater insurance coverage than the policy otherwise provided.

■ In summary, California's statutory law is expressly applicable to the policies in question while Hawaii's statutory law is by its terms inapplicable. California has the more significant contacts with the parties and the issues and the greater interest in resolution of the matter. Application of California law will satisfy our law and public policy, and will not violate Hawaiian law or do damage to Hawaii's interest in the matter. Additionally, since these policies represent contracts between California residents pursuant to California law concerning risks that were to be principally located in California, the application of California law will fulfill the legitimate expectations of the parties. Under these circumstances the trial court did not err in applying California law to the issues in question. Under our law the other insurance clauses in defendants' policies are valid and enforceable. Consequently, defendants may not stack their uninsured motorist coverage.

## II. *The Swimleys' Policy Limits.*

The Swimleys' policy provided uninsured motorist coverage with limits of $15,000 per person and $30,000 per incident. ■ They contend they should be afforded coverage in the amount of $25,000 per person, which are the limits which would have been afforded by a Hawaiian insurance policy. In view of our discussion this contention need only be briefly addressed. In a nut shell, the Swimleys are not entitled to the higher limits pursuant to

Hawaiian law. As we have noted, Hawaiian law does not by its terms apply to either the Swimleys or to the policy issued to them by California Casualty. (Hawaii Rev. Stats. §§ 287-7, subd. (1), 431-448, subd. (a).) We decline to derive a policy from the inapplicable Hawaiian statutes which would then be applied in derogation of our applicable statutory law. Moreover, the out-of-state provision of the Swimleys' policy does not operate to increase the limits of their coverage because that clause only applies where the insureds are required to maintain insurance under the laws of another state and the Swimleys were not required to be insured under Hawaiian law. For these reasons the Swimleys are not entitled to make uninsured motorist claims in excess of the limits stated in their policy.

The judgment is affirmed.

Evans, Acting P. J., and Deegan, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.