[No. D013420. Fourth Dist., Div. One. Mar. 24, 1993.]

STONEWALL SURPLUS LINES INSURANCE COMPANY et al.,
Plaintiffs and Respondents, v.
JOHNSON CONTROLS, INC., Defendant and Appellant.

638

**COUNSEL**

Arnstein & Lehr, Michael A. Stiegel, Arthur L. Klein, Luce, Forward, Hamilton & Scripps, Richard R. Spirra and Mark W. Hansen for Defendant and Appellant.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Virginia R. Gilson, James E. Chodzko and Robert Scott Dreher for Plaintiffs and Respondents.

**OPINION**

BENKE, Acting P. J.—In this case a San Diego jury returned a verdict assessing $6.5 million in exemplary damages against a Wisconsin corporation. The corporation's liability insurers, residents of Connecticut, Alabama,

Texas and Illinois, filed a declaratory relief action alleging they were not required to provide the corporation with any indemnity for the exemplary damages. The corporation answered the complaint, alleging Wisconsin law governed the policies and under Wisconsin law the insurers were liable for both compensatory and punitive damages.

On cross-motions for summary judgment the trial court agreed with the insurers and entered judgment in favor of the insurers. On appeal we affirm.

The parties agree that in California an insured may not seek indemnity from an insurer for exemplary damages. Because the defective battery which gave rise to the underlying claim was manufactured in California and caused injury in California to a California resident, California has an interest which supports application of this restriction on insurance coverage.

## FACTUAL AND PROCEDURAL HISTORY

### A. *Jones Action*

On June 3, 1986, a resident of San Diego, Gary Jones was assisting his neighbor Fred Hill "jump-start" Hill's car. While Jones was working on Hill's battery it exploded. Jones suffered brain damage and was blinded in one eye. As a result of his injuries Jones has experienced persistent seizures.

The battery in Hill's car was manufactured in Fullerton, California, by defendant and appellant Johnson Controls, Inc. (Johnson Controls). Hill purchased the battery from a Sears store in San Diego.

Jones and his wife, Mona, filed a complaint against Hill, Sears, and Johnson Controls in superior court in San Diego. Following trial, the jury returned a verdict which found Johnson Controls and Sears had been negligent and that their negligence caused Jones's injuries. The jury found Jones had not been negligent. The jury awarded Jones $2,905,000 in compensatory damages and his wife $325,000 in damages.

In addition, the jury found Johnson Controls had acted with malice, fraud or oppression. As we have previously noted, the jury found that $6.5 million was an appropriate amount of punitive damages to impose on Johnson Controls.

Judgment in the amount of $10,693,649.228[1] was entered against Johnson Controls.

## B. *These Proceedings*

On March 17, 1989, shortly after the verdict in the Jones action was returned, plaintiffs and respondents Stonewall Surplus Lines Insurance Company (Stonewall), Constitution State Insurance Company (Constitution) and Republic Insurance Company (Republic) filed a declaratory relief action against Johnson Controls and the Joneses in superior court in San Diego. The insurers alleged they had provided excess liability insurance to Johnson Controls at the time Jones was injured. The insurers further alleged they were not required to indemnify Johnson Controls for the exemplary damages awarded because such indemnification was contrary to public policy and because they had not been given timely notice of the Joneses' claim.

After making an unsuccessful attempt to remove the case to district court and an unsuccessful attempt to have the case dismissed on forum non conveniens grounds, Johnson Controls filed an answer. As an affirmative defense Johnson Controls alleged the insurance policies issued by the excess insurers were governed by Wisconsin law and that, in any event, a judgment in the excess insurers' favor would be an unconstitutional impairment of Johnson Controls's contract rights and violate its right to due process of law.

The insurers moved for summary adjudication. They argued that, as alleged in their complaint, they are not liable for the punitive damages assessed against Johnson Controls. Johnson Controls filed a cross-motion for summary judgment or, in the alternative, summary adjudication. Johnson Controls, as alleged in its answer, argued the insurance contracts were governed by Wisconsin law which permits insurance companies to indemnify punitive damages awards.

The trial court agreed with the insurers and granted their motion and denied Johnson Controls's motion. Having found the insurers had no obligation to indemnify the punitive damage award and no other triable issue of material fact, the trial court entered judgment in favor of the insurers. Johnson Controls filed a timely notice of appeal.[2]

---

[1]This amount included an award of prejudgment interest and costs.

[2]An order directing entry of judgment in favor of the insurers was filed on August 13, 1990. Johnson Controls filed a notice of appeal from the order on October 12, 1990. Thereafter, on April 11, 1991, a judgment in favor of the insurers was entered. If, as the insurers suggest, the August 13, 1990, order was not appealable (see *Dover* v. *Sadowinski* (1983) 147 Cal.App.3d

### Issues on Appeal

As it did below, Johnson Controls argues its rights under the insurance policies are governed by the law of Wisconsin, the state where its headquarters are located. Johnson Controls contends Wisconsin law is required by both conflict of laws principles and the United States Constitution. We reject these contentions and affirm the judgment.

### Discussion

### I

We begin our analysis of Johnson Controls's conflict of laws argument by determining whether there is any conflict between the laws of California and Wisconsin. (*Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co.* (1980) 103 Cal.App.3d 198, 202 [162 Cal.Rptr. 720].) As "succinctly described in *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666]: 'The fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of law' problem. There is obviously no problem where the laws of the two states are identical.' (*Id.*, at p. 580; see also *Beech Aircraft Corp.* v. *Superior Court* (1976) 61 Cal.App.3d 501, 518 [132 Cal.Rptr. 541].)" (*Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co., supra,* 103 Cal.App.3d at p. 202.)

■ The parties agree that in California an insurer is not liable for any portion of a judgment which awards punitive damages. (*City Products Corp.* v. *Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 42 [151 Cal.Rptr. 494] (*City Products*); see also *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 156 [181 Cal.Rptr. 784, 642 P.2d 1305]; *State Farm Fire & Cas. Co.* v. *Superior Court* (1987) 191 Cal.App.3d 74, 77 [236 Cal.Rptr. 216]; *California State Auto. Assn. Inter-Ins. Bureau* v. *Carter* (1985) 164 Cal.App.3d 257, 262-263 [210 Cal.Rptr. 140, 54 A.L.R.4th 1177]; *Ford Motor Co.* v. *Home Ins. Co.* (1981) 116 Cal.App.3d 374, 379 [172 Cal.Rptr. 59]; Annot., Insurance Coverage—Punitive Damages, 16 A.L.R.4th 11.) As explained in *City Products*, "the policy of this state with respect to punitive damages would be frustrated by permitting the party against whom they are awarded to pass on the liability to an insurance carrier. The objective is to impose such damages in an amount which will appropriately punish the defendant in view of 'the actual damages sustained,' 'the magnitude and flagrancy of the offense, the

113, 115 [194 Cal.Rptr. 866]), the notice of appeal may be construed as if it was filed immediately after entry of judgment. (rule 2(c), Cal. Rules of Court.) Thus, as Johnson Controls argues, under either circumstance we have jurisdiction to reach the merits of its appeal.

importance of the policy violated, and the wealth of the defendant.' [Citation.] Consideration of the wealth of the defendant would of course be pointless if such damages could be covered by insurance. The onus of the award would depend entirely upon the amount of insurance coverage and not upon the legally relevant factors. We conclude, therefore, that the public policy of this state prohibits insurance covering the punitive damages levied against plaintiff." (*City Products, supra,* 88 Cal.App.3d at p. 42.)[3]

The prohibition against insuring exemplary damages applies whether the conduct which gave rise to the award of punitive damages was intentional or committed in conscious disregard of the safety or rights of the plaintiff. (*Peterson v. Superior Court, supra,* 31 Cal.3d at pp. 158-159; *Ford Motor Co. v. Home Ins. Co., supra,* 116 Cal.App.3d at pp. 383-384.)

The rule in Wisconsin is different. (See *Brown v. Maxey* (1985) 124 Wis.2d 426 [369 N.W.2d 677, 686-688].) In *Brown v. Maxey* a landlord was held liable for burns suffered by one of his tenants in a fire; in addition to compensatory damages the jury awarded $200,000 in punitive damages. The Supreme Court of Wisconsin held the jury could award punitive damages based on the landlord's reckless disregard of his tenant's safety. (*Id.* at pp. 681-682; cf. *Peterson v. Superior Court, supra,* 31 Cal.3d at pp. 156, 160 [conscious disregard of safety of others will support punitive damages]; Civ. Code, § 3294, subd. (c)(1) [malice exists where defendant engages in "despicable conduct which is carried on by the defendant with a willful or conscious disregard of the rights or safety of others"].)

The Wisconsin court also held the landlord's insurer was required under the terms of its policy to pay both the compensatory and punitive portions of

---

[3]The rationale expressed by the court in *City Products* is the most recent opinion of our Supreme Court on the subject of punitive damages: "Because the quintessence of punitive damages is to deter future misconduct by the defendant, the key question before the reviewing courts is whether the amount of damages 'exceeds the level necessary to properly punish and deter.' (*Neal* [v. *Farmers Ins. Exchange* (1978)] 21 Cal.3d [910,] at p. 928 [148 Cal.Rptr. 389, 582 P.2d 980]; *Merlo v. Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416].) The question cannot be answered in the abstract. The reviewing court must consider the amount of the award in *light of* the relevant facts. The nature of the inquiry is a comparative one. Deciding in the abstract whether an award is 'excessive' is like deciding whether it is 'bigger,' without asking 'Bigger than what?'

"A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition. Since *Neal, supra,* 21 Cal.3d 910, we have repeatedly examined punitive damage awards in light of the defendant's financial condition. (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 790-791 [157 Cal.Rptr. 392, 598 P.2d 45]; *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 823-824 [169 Cal.Rptr. 691, 620 P.2d 141].)" (*Adams v. Murakami* (1991) 54 Cal.3d 105, 110-111 [284 Cal.Rptr. 318, 813 P.2d 1348].)

the judgment. (*Brown* v. *Maxey*, *supra*, 369 N.W.2d at pp. 686-688.) The court found that as defined in the policy "[t]he term 'damages' is sufficiently broad to cover liability for both compensatory and punitive damages. Punitive damages are not specifically excluded from the policy language." (*Brown* v. *Maxey*, *supra*, 369 N.W.2d at p. 686.) Although the court agreed the policy did not cover acts intended or expected from the insured's point of view, and that the landlord had acted outrageously, "we uncover no evidence that [the landlord's] conduct crosses the line to be classified as intentional." (*Ibid.*)

Unlike the court in *City Products*, the Wisconsin Supreme Court found that public policy did not prevent indemnity for punitive damages. " ' "Public policy" is no magic touchstone. This state has more than one public policy. Another and countervailing public policy favors freedom of contract, in the absence of overriding reasons for depriving the parties of that freedom. Still another public policy favors the enforcement of insurance contracts according to their terms, where the insurance company accepts the premium and reasonably represents or implies that coverage is provided.' [Citation.]

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . We find no overriding reason to deprive these parties of what they have freely contracted. State Farm had the option of excluding liability for punitive damages. It failed to do so and has presumably collected premiums which it believed to be sufficient consideration for such coverage. [Citation.]

"Moreover, we are not convinced that allowing insurance coverage for punitive damages will totally alleviate the deterrent effect of such awards. For example, as a consequence of the punitive damage award, defendant Maxey's insurance premiums may rise, he may find himself unable to obtain insurance coverage, the punitive damage award may exceed coverage, and his reputation in the community may be injured.

"Finally, punitive damages are designed not only to deter and punish the wrongdoer, but also are designed to serve as a deterrent to others. Allowing insurance coverage to extend to punitive damages will not thwart this purpose." (*Brown* v. *Maxey*, *supra*, 369 N.W.2d at pp. 687-688.)

In this case we cannot avoid consideration of the conflict between the laws of California and Wisconsin. Under California law public policy prevents Johnson Controls from avoiding the deterrent effect of the punitive damages by obtaining indemnity from its insurers.

On the other hand, like the insurance policy discussed in *Brown* v. *Maxey*, the excess insurers' policies do not expressly exclude coverage for punitive

damages. Moreover, although the policies only cover accidental events which are "neither expected nor intended from the standpoint of the insured," as in *Brown* v. *Maxey,* the verdict in the *Jones* action contains no finding Johnson Controls was guilty of intentional conduct, as opposed to a conscious disregard for Jones's safety, and there is no other evidence in the record the company intended to injure Jones. Thus, under *Brown* v. *Maxey* the excess insurance policies would provide indemnity for the punitive damages assessed in the *Jones* action and Johnson Controls's contractual right to such indemnity would prevail over any public policy supporting imposition of punitive damages.

In short then, there is a true conflict of laws here because the substantive law of California leads to a different result than the substantive law of Wisconsin.

## II

■ "California now follows a methodology characterized as the 'governmental interest' approach to choice of law problems. (*Kasel* v. *Remington Arms Co.* (1972) 24 Cal.App.3d 711, 730 [101 Cal.Rptr. 314].) Applying this method, the forum must search to find the proper law to apply based upon the interests of the litigants and the involved states. (*Reich* v. *Purcell, supra,* at p. 553.) ■ With the governmental interest approach, 'relevant contacts' stressed by the Restatement Second of Conflict of Laws are not disregarded, but are examined in connection with the analysis of the interest of the involved state in the issues, the character of the contract and the relevant purposes of the contract law under consideration. (*Kasel* v. *Remington Arms Co., supra,* 24 Cal.App.3d at p. 731.) ■ The forum must consider all the foreign and domestic elements and interests involved in the case to determine the applicable rule. (*Reich* v. *Purcell, supra,* 67 Cal.2d at p. 555.)" (*Dixon Mobile Homes, Inc.* v. *Walters* (1975) 48 Cal.App.3d 964, 972 [122 Cal.Rptr. 202], fn. omitted [overruled on other grounds by *Bullis* v. *Security Pacific Nat. Bank* (1978) 21 Cal.3d 801, 815 (148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642)]; *Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co., supra,* 103 Cal.App.3d at pp. 204-205.)[4]

In considering the interests of the parties and the states involved, initially we note there is no express choice of law provision in the policies issued by the excess insurers. The absence of a choice by the parties is significant because where the parties have made a choice of law, their choice is usually enforced. (Rest.2d Conf. of Laws, § 187; 1 Witkin, Summary of Cal. Law

---

[4]The parties do not dispute this case is governed by California's choice of law rules.

(9th ed. 1987) Contracts, § 44, pp. 82-86 (Witkin); see *California Casualty Indemnity Exchange* v. *Deardorff* (1984) 157 Cal.App.3d 548, 552 [203 Cal.Rptr. 725]; but see *Mencor Enterprises, Inc.* v. *Hets Equities Corp.* (1987) 190 Cal.App.3d 432, 439-440 [235 Cal.Rptr. 464].)

■ Where no effective choice of law has been made by the parties, the relevant contacts to be considered in a dispute over the validity of a contract or the rights thereunder are set forth in section 188, subdivision (2) of the Restatement Second of Conflict of Laws: "(a) the place of contracting, [¶](b) the place of negotiation of the contract, [¶](c) the place of performance, [¶](d) the location of the subject matter of the contract, and [¶](e) the domicil, residence, nationality, place of incorporation and place of business of the parties. [¶]These contacts are to be evaluated according to their relative importance with respect to the particular issue." (See also *Dixon Mobile Homes, Inc.* v. *Walters, supra,* 48 Cal.App.3d at p. 972; *Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co., supra,* 103 Cal.App.3d at pp. 204-205.)

■ Where, as here, a casualty insurance contract is in dispute, particular importance is placed on the location of the subject matter of the contract, i.e. the location of the insured risk. (See *California Casualty Indemnity Exchange* v. *Pettis* (1987) 193 Cal.App.3d 1597, 1607 [239 Cal.Rptr. 205]; Witkin, *supra,* Contracts, § 71, pp. 106; Rest.2d, Conf. of Laws, § 193.) "The Restatement Second of Conflict of Laws section 193 states: 'The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship. . . .' As the court explained in *Cunningham* v. *Equitable Life Assur. Soc. of U.S.* (2d Cir. 1981) 652 F.2d 306: 'In contracts of casualty insurance, . . . the principal location of the insured risk is given particular emphasis in determining the choice of the applicable law. [Citation.] This is so because location has an intimate bearing upon the nature of the risk and the parties would naturally expect the local law of the state where the risk is to be principally located to apply. [Citations.] Moreover, the state where the insured risk will be principally located during the term of the policy has an interest in the determination of issues arising under the insurance contract.' (*Id.,* at p. 308, fn. 1.)" (*California Casualty Indemnity Exchange* v. *Pettis, supra,* 193 Cal.App.3d at p. 1607.)

More importantly for our purposes, "Where a multiple risk policy insures against risks located in several states, it is likely that the courts will view the

transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved. (Rest.2d, Conflict of Laws, § 193, Comment f.)"[5] (Witkin, *supra*, Contracts, § 71, p. 106; see also *Crown Center* v. *Occidental Fire & Cas. Co.* (Mo.Ct.App. 1986) 716 S.W.2d 348, 358-359; *Baybutt Constr. Corp.* v. *Commercial Union Ins.* (Me. 1983) 455 A.2d 914, 919; but see *Vigen Const. Co.* v. *Millers Nat. Ins. Co.* (N.D. 1989) 436 N.W.2d 254, 257; *St. Paul Surplus Lines* v. *Diversified Athletic* (N.D.Ill. 1989) 707 F.Supp. 1506, 1513.[6])

We believe the multiple risk approach suggested by Witkin and the Restatement should apply here. Initially, we note that in an effort to obtain excess coverage, Johnson Controls circulated an underwriting submission prepared by its insurance broker. Attached to the underwriting submission is a list of 18 states and 5 foreign countries where Johnson Controls operates manufacturing facilities and 128 locations from Adelaide, Australia to Youngstown, Ohio where the corporation has sales and service facilities. According to the text of the underwriting submission, Johnson Controls expected to produce $2.6 billion in sales during the 1985-1986 policy period.

We also note that, except for the limits of liability, the excess insurers agreed to provide Johnson Controls with the same coverage provided by the company's primary carrier. Significantly, the primary policy contains individual amendatory endorsements for the states of New York, New Jersey,

---

[5]Restatement Second, Conflict of Laws section 193, comment f, states: "A special problem is presented by multiple risk polices which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and Z. These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form. If so, the single policy will usually incorporate the special statutory forms of the several states involved. Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk. So, if the house located in state X were damaged by fire, it is thought that the court would determine the rights and obligations of the parties under the policy, at least with respect to most issues, in accordance with the local law of X. In any event, that part of a policy which incorporates the special statutory form of a state would be construed in accordance with the rules of construction of that state."

[6]In *Vigen Const. Co.* v. *Millers Nat. Ins. Co., supra*, 436 N.W.2d at page 257 and *St. Paul Surplus Lines* v. *Diversified Athletic, supra*, 707 F.Supp. at page 1513, the courts relied solely on comment b to section 193 of the Restatement Second of Conflict of Laws which states in part: "The location of the insured risk will given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states." We do not believe it is appropriate to rely solely on comment b without considering the applicability of comment f (see fn. 5, *ante*) and the likelihood that the parties intended to create separate policies for the risks created in separate states.

Massachusetts, New Hampshire, Wisconsin, Kansas, Oregon, Florida, Michigan, Alaska and Vermont.

■    Thus, the record here supports the conclusion Johnson Controls is a large corporation with worldwide operations and, more importantly, both Johnson Controls and its insurers carefully considered the complexity of the corporation's activities at the time the policies were issued. Under these circumstances we believe Johnson Controls and its insurers would reasonably expect not only that the corporation's liability to a third party might be governed by the law of a state with significant interests at stake, but that Johnson Controls's right to indemnity for such a claim might also be governed by that state's law. As suggested by Witkin and the Restatement, given the nature of the risks insured, this is a case where in reality Johnson Controls did not obtain a single policy which it could expect would be governed by the law of one state; rather, Johnson Controls obtained separate policies which insure separate risks located in any number of states where the corporation does business.[7]

Our adoption of the multiple risk approach is significant in measuring the competing interests of California and Wisconsin. First, there can be little doubt that from the perspective of Johnson Controls and the insurers, California is the principal location of the risk created by the defective battery. The battery was manufactured in California, sold to a retailer here and purchased by a California resident. Thus Johnson Controls and the insurers would reasonably expect this risk to be governed by California law. (Rest.2d, Conf. of Laws, § 193, com. f.)

As we have seen, in *Brown* v. *Maxey* the court found Wisconsin's interest in protecting the reasonable expectations of its insureds outweighs any additional deterrence provided by a rule which relieves insurers from responsibility for punitive damages. (*Brown* v. *Maxey, supra,* 369 N.W.2d at pp. 687-688.) Because Johnson Controls would reasonably expect California law would apply to the battery it manufactured and sold here, application of the California rule would not seriously impair the expectation interest Wisconsin has sought to protect by permitting insurers to pay punitive damage awards.

---

[7]We do not mean to suggest that such a multiple risk approach will be appropriate in all cases where an insured's activities expose it to liability in a number of states. In a variety of circumstances the particular risks insured or a particular policy will make it clear that the parties do not expect the insured's rights under a policy will be controlled by the location of insured event. (See e.g., com. b to Rest.2d, Conf. of Laws, § 193.)

Rather, since we have concluded Johnson Controls obtained multiple policies, application of the California rule would give Johnson Controls the benefit of its bargain with the insurers.[8]

In contrast, failure to apply California's rule would severely impair California's interests. As we have seen California's paramount interest is in protecting its residents by deterring tortfeasors. (See *Adams* v. *Murakami, supra*, 54 Cal.3d at p. 110; *Peterson* v. *Superior Court, supra*, 31 Cal.3d at pp. 158-159; *City Products, supra*, 88 Cal.App.3d at p. 42; *Ford Motor Co.* v. *Home Ins. Co., supra*, 116 Cal.App.3d at pp. 383-384.) Here, the liability imposed grew out of severe injury suffered by a California resident while he was in California and caused by manufacturing and marketing activities which occurred exclusively in this state. It is difficult to imagine circumstances where California would have a greater interest in altering the future behavior of a defendant by compelling payment directly from the defendant rather than its insurers.[9]

In sum then California's rule applies here because it is the principal location of the risk involved, because application of California's rule is entirely consistent with Wisconsin's interest in protecting the reasonable expectations of its insured and because California has a significant interest in applying its rule.

### III

In addition to its choice of laws contentions, on appeal Johnson Controls argues application of California law is barred by the due process and full faith and credit clauses of the United States Constitution. (U.S. Const., 14th Amend., art. IV, § 1.) We reject this argument.

■ Due process and full faith and credit require "that for a State's substantive law to be selected in a constitutionally permissible manner, that

---

[8]We also note the court in *Brown* v. *Maxey* recognized Wisconsin has an interest, albeit a subsidiary one, in providing deterrence to tortfeasors. (*Brown* v. *Maxey, supra*, 369 N.W.2d at pp. 687-688.) Obviously, application of the California rule would enhance that subsidiary interest.

[9]In this regard *Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co., supra*, 103 Cal.App.3d at pages 205-206, is readily distinguishable. In that case a California insured sued a Maryland insurer for declaratory relief, alleging the insurer had breached its duty to defend. The insured was successful and sought attorney fees under the law of Florida, the state where the claim arose. In applying California law, we found Florida had no interest in deterring the insurer's wrongful conduct. (*Id.* at p. 206.) Unlike the interests of Florida in *Robert McMullan & Son, Inc.* v. *United States Fid. & Guar. Co.*, here California is not concerned with governing the conduct of an nonresident insurer and its impact on a nonresident insured. Rather, here application of California law will have a direct impact on a tortfeasor whose activities within this state harmed a California resident.

State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." (*Allstate Ins. Co.* v. *Hague* (1981) 449 U.S. 302, 313 [66 L.Ed.2d 521, 530-531, 101 S.Ct. 633]; see also *Phillips Petroleum Co.* v. *Shutts* (1985) 472 U.S. 797, 821-822 [86 L.Ed.2d 628, 648-649, 105 S.Ct. 2965].) As we pointed out in our discussion of the choice of laws issue, California has a substantial interest in regulating Johnson Controls's manufacturing activities in this state, especially as here, where those activities have injured one of its residents.

Judgment affirmed.

Froehlich, J., and Nares, J., concurred.