Filed 2/25/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TEXTRON, INC., | B262933 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC475622) |
| v. | |
| TRAVELERS CASUALTY AND SURETY COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a Judgment of the Superior Court of Los Angeles County.  Mitchell L. Beckloff, Judge.  Reversed.

Nossaman, Jennifer L. Meeker, Steven E. Knott; Pillsbury Winthrop Shaw Pittman and Steven E. Knott for Plaintiff and Appellant.

Dentons US, Ronald D. Kent and Susan M. Walker for Defendant and Respondent.

This insurance coverage dispute between Appellant Textron Inc. (Textron) and respondent Travelers Casualty and Surety Company (Travelers) raises the issue whether an earlier choice of law ruling in a Rhode Island coverage action between the parties qualifies for collateral and judicial estoppel effect, thus precluding Textron from seeking coverage under California law in the current California coverage action, and leading to the conclusion that Textron's claim is outside the policy period.

In 2011, Textron was sued by a California resident in Los Angeles Superior Court for damages caused by mesothelioma resulting from asbestos exposure from Textron's manufacturing operations in California (the Esters action). After settlement of that action, Textron initiated the instant California action against Travelers (later spawning additional cross-complaints from both parties) to obtain a declaration that Travelers owed a duty to defend and indemnify in the Esters action under a series of Commercial General Liability (CGL) policies issued to Textron by Travelers from January 1, 1966 to January 1, 1987 (the Travelers policies).

Some 24 years earlier, in 1991, Textron was facing various governmental and private lawsuits in 19 states, including California, for environmental property damage and possible personal injury. In Rhode Island (not a site of damage or injury), Textron brought a declaratory relief action against 49 insurers involving 258 insurance policies. It sought and received a ruling that Rhode Island law would apply to interpret the policies. Among the insurers and policies

involved in the Rhode Island action were Travelers and the Travelers polices.

The determinative question in this appeal is whether the Rhode Island choice of law ruling has collateral and judicial estoppel effect, thus precluding Travelers from seeking a ruling that California's "continuous trigger" rule (rather than Rhode Island's "manifestation trigger" rule) governs the definition of an "occurrence" under the Travelers policies for determining coverage of the Esters action. The trial court ruled that it did, and granted summary judgment for Travelers. We conclude otherwise.

The key point is whether the identical issue was presented and decided in the Rhode Island action. The answer lies in an unusual confluence of principles governing collateral and judicial estoppel, the interpretation of the term "occurrence" in standard CGL policies, and conflict of laws. Contrary to Traveler's position (and the trial court's ruling), the answer does not turn on whether in Rhode Island, for claims of personal injury, Textron sought and received a ruling that Rhode Island law applied to interpret the *identical Travelers policies.* Rather, the determinative factor is whether, in ruling that Rhode Island law applied to interpret the Travelers policies, the Rhode Island court was presented with and decided the *identical choice of law issue.* That choice of law issue is whether, under California's governmental interest analysis, California's continuous trigger rule or Rhode Island's manifestation trigger rule should apply to an occurrence of continuous or progressively deteriorating illness suffered by a California resident, in California, caused by Textron's activities in California. Choice of law

3

is necessarily a fact intensive analysis, and for several reasons we conclude that the factual predicate of the Rhode Island action was not adequate to litigate and decide the identical choice of law issue presented in this case. Thus, neither collateral nor judicial estoppel applies, and we reverse the trial court's grant of summary judgment for Travelers on Textron's declaratory relief complaint, and on the parties' respective cross complaints. We remand for further appropriate proceedings.

## BACKGROUND

1.  *The Travelers Policies*

The relevant Travelers policies (multiple-risk CGL policies insuring Textron's activities in multiple states) were issued by Travelers during the period January 1, 1966 to January 1, 1987.[1] They covered numerous manufacturing operations of Textron and its subsidiary divisions. The  policies insured against "damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage." Section 4.11 of the policies defined "'[p]ersonal injury'" in relevant part as "bodily injury, disability, shock, mental anguish and mental injury, sickness or disease, including death resulting therefrom; and injury

---

[1]     One version of the policies was in effect from January 1, 1966 to January 1, 1972, while another version was in effect from January 1, 1973 to January 1, 1987. These policies contain different definitions for "personal injury" and "property damage" not relevant here. The policy numbers in the Rhode Island litigation are the same as those in the present litigation.

arising [from] wrongful entry or imprisonment, disparagement of property . . . sustained by any person." The policies defined "'occurrence'" as "an accident, event or a continuous or repeated exposure to conditions which results, during the policy period, in personal injury or property damage which is neither expected nor intended from the standpoint of the Insured." The policies did not have choice-of-law provisions, and provided that "[Travelers] shall have the right and duty to defend any suit against the insured brought within the United States of America, its Territories or Possessions or Canada seeking damages on account of such personal injury or property damage."

2. *The Esters Action*

In March 2011, the Esters action was filed against Textron in Los Angeles Superior Court, seeking damages for mesothelioma diagnosed in December 2010 arising out of Textron's operations in California.[2] Plaintiff Esters alleged that her mother had been employed by Textron in Los Angeles and Santa Ana from 1950 to 1983, and that Esters had been exposed to asbestos through her mother's exposure.

Textron tendered the action to Travelers, as well as to Liberty Mutual Insurance Company (Liberty) and the Hanover Insurance Company (Hanover).[3] Travelers provided a defense, subject to a

---

[2]     Esters sued many other defendants not here relevant.

[3]     Hanover and Liberty insured Textron from January 1, 1958 through January 1, 1962. Textron initially named them as defendants in its instant

5

reservation of rights, and refused to settle unless Textron and the other two insurers agreed to Travelers' condition that any settlement would also be subject to a full reservation of rights. Ultimately, in December 2011, the Esters case settled for $2.4 million. With a reservation of rights, Travelers, Liberty, and Hanover funded the settlement: Travelers paid $1.8 million, Liberty paid $432,000, and Hanover paid $168,000.

### 3.    *The Instant Action*

Textron commenced the instant action by filing a declaratory relief complaint against Travelers, seeking a declaration that the Esters action was covered by the Travelers policies. Travelers then cross-complained against Textron, seeking reimbursement for the costs of providing a defense and funding the settlement in the Esters action. Textron responded with a cross-complaint against Travelers for breach of contract and bad faith.

Central to the dispute between the parties is: (1) the conflict between Rhode Island and California law in defining a covered occurrence under the Travelers policies for continuous or progressively deteriorating personal injury, and (2) the effect, if any, that the prior Rhode Island action has on Textron's right to have California law rather than Rhode Island law govern.

---

declaratory relief action, but later dismissed them, and they are not parties to this appeal.

4.  *Conflict in Triggers of Coverage*

A brief explanation of "triggers of coverage" is helpful.  "A recurring problem in interpreting standard CGL policies that provide coverage for injuries 'caused by an occurrence' is determining what has come to be called the 'trigger of coverage'—that is, the operative event which activates the insurer's defense and indemnity obligations.  As the Supreme Court recently explained, the word 'trigger' is not found in the CGL policies themselves, nor does the Insurance Code define 'trigger of coverage.'  Instead, 'trigger of coverage' is a term of convenience used to describe what must happen in the policy period to give rise to insurance coverage.  (*Montrose Chemical Corp. v. Admiral Ins. Co.* [(1995)] 10 Cal.4th 645, 655, fn. 2 (*Montrose*).)"  (*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.* (1996) 45 Cal.App.4th 1, 39.)

Relevant to the dispute between Textron and Travelers are two triggers.  The first is the "continuous trigger," applied by California courts to occurrences of continuous or progressively deteriorating injury such as injury caused by exposure to asbestos.  Under the continuous trigger, "if specified harm is caused by an included occurrence and results, at least in part, within the policy period, it perdures to all points of time at which some such harm results thereafter."  (*Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 57.)  The California Supreme Court first adopted this analysis for third party claims of continuous or progressively deteriorating injury in 1995, in *Montrose, supra*, 10 Cal.4th 645.

7

The second trigger is the "manifestation trigger," which Travelers contends Rhode Island applies to progressive injury. Under Rhode Island's version of this test, a covered occurrence exists "when the damage . . . manifests itself, . . . is discovered or, . . . in the exercise of reasonable diligence is discoverable." (*Textron, Inc. v. Aetna Cas. and Sur. Co.* (R.I. 2002) 754 A.2d 742, 746.) Travelers maintained that because in the Esters action the mesothelioma was not diagnosed until 2010, it did not manifest until then, and because the Travelers policies were in effect only for the period January 1, 1966 to January 1, 1987, the Esters action was not a covered occurrence under Rhode Island law.

Travelers' assertion that Rhode Island law applied to the determination of coverage of the Esters claim was based on its view that the prior Rhode Island action collaterally and judicially estopped Textron from arguing that any law other than Rhode Island law applied. Thus, we must explain the nature of the Rhode Island action as presented by Textron in the summary judgment proceedings below.

5. *The Rhode Island Action*

More than 24 years before Textron was sued in the Esters action, it was facing a myriad of lawsuits brought by private parties and federal and state agencies alleging personal injury and property damage caused by environmental contamination at various sites in 19 states, including California. In 1987, Textron brought a coverage action in Rhode Island (not a site of any alleged damage or injury), in which it sued 49 insurance carriers (which were incorporated in 15 different states), including Travelers, seeking coverage under 258 policies issued

8

to Textron from 1960 to 1986, including the Travelers policies at issue here.

In its operative complaint in that action, Textron alleged that "[c]laims of various types, alleging property damage and personal injury at various properties happening as early as 1960 and continuing through to the present, have been asserted against Textron and its divisions." Textron attached "Information Summaries" setting forth the claims for which it was seeking coverage listing each policy and location of occurrence. They all involved some type of environmental contamination from operations by Textron or its subsidiaries.[4]

Textron moved for partial summary judgment, seeking a ruling that in determining the duty to defend under all 258 policies (most of which did not contain a choice-of-law provision) the law of one state— Rhode Island—should govern. Textron argued that Rhode Island uses a "common-sense" interest-weighing test to resolve conflict of law disputes. Textron identified no specific conflict between Rhode Island

---

[4]     The states involved were California, Illinois, Indiana, Michigan, Pennsylvania, Kentucky, Oklahoma, South Carolina, North Carolina, New Jersey, Maine, Wisconsin, Vermont, Missouri, Florida, Connecticut, Massachusetts, New Hampshire, and New York.

The occurrences alleged to have occurred in California involved (1) contamination by "[l]ead and other chemicals" in San Dimas; (2) "[a]pproximately 650 gallons of acid" at Stringfellow Acid Pits in Glen Avon Heights; (3) "[u]known quantities of various plant discharges including acids, lye solution, oil soap, rinse water, hydraulic fluids, [and] 1-1-1 trichloroethane" at Visalia; (4) "[u]nspecified amount of oil, grease, solvents, [and] paints from leaking underground storage tanks" at Valencia; and (5) "[l]eaking underground storage tanks containing oil, grease, hydrocarbon, perc, toluene" contaminating the soil in Pacoima.

law and the law of any of the 19 states in which the damage and injury occurred, including California. Rather, Textron argued that Rhode Island had the most significant interest of any single state because: (1) Textron had maintained its principal place of business in Rhode Island since 1949; (2) its risk management department was located in Rhode Island; (3) the premiums on insurance policies sold to Textron were paid from Rhode Island; and (4) the insurance policies and all notices relating to insurance policies were delivered to Textron's principal place of business in Rhode Island.

In 1991, the Rhode Island court apparently agreed (though the court's written order does not state the court's reasoning), and ruled that Rhode Island law would govern the interpretation of all the primary insurance policies sold to Textron "that are [the] subject matter of the Motion for Partial Summary Judgment on the Duty to Defend." The Rhode Island action settled in 1995, and the action was dismissed.

6.  *Denial of Textron's Motion for Summary Judgment in the Instant Case*

In the instant case, Textron moved for summary judgment on Travelers' cross-complaint for reimbursement of costs incurred in defending and settling the Esters action. As here relevant, Textron argued California law applied because under Civil Code section 1646, a contract is to be interpreted accordance with the law and usage of the place of its performance, which for the Esters action was California. (See *Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436,

10

1442–1443 [choice of law concerning interpretation of a contract is the law of the place of performance].)

In opposition, Travelers relied on the ruling in the Rhode Island action to argue that Textron was collaterally and judicially estopped to argue that any law other than Rhode Island law applied to the policies. In response, Textron argued that although Rhode Island law controlled the policies in the Rhode Island action, that action did not involve a personal injury asbestos claim and thus the issues were not identical in both cases. Further, under California's choice of law analysis, Textron argued Rhode Island law should not control because California and Rhode Island differed on the trigger of coverage for asbestos bodily injury claims, and Rhode Island had no overriding interest in having its law apply.

In September 2012, the trial court denied Textron's motion for summary judgment on Travelers' cross-complaint. In doing so, it concluded that Textron was estopped by the Rhode Island ruling to seek application of California law.

7.   *Travelers' Motions for Summary Judgment*

In October 2012, after the denial of Textron's motion for summary judgment, Travelers filed motions for summary adjudication/summary judgment against Textron on Textron's declaratory relief complaint and cross-complaint for breach of contract and bad faith, and on Travelers' cross-complaint for reimbursement. As here relevant, Travelers argued (as suggested in the trial court's denial of Textron's summary judgment motion) that Textron was collaterally and judicially estopped from

11

arguing that Rhode Island law did not apply to interpret the Travelers policies. Further, Travelers argued that under Rhode Island's manifestation trigger, the Esters action was not an occurrence within the coverage period of the policies.

Textron responded that estoppel could not bar its claims, that California law applied to the dispute, and that under the continuous trigger rule, there existed a disputed material factual question whether Esters' claim was an occurrence within the coverage periods of the Textron policies. In support of applying the continuous trigger rule, Textron submitted a declaration from Dr. Arnold Brody, in which Dr. Barry Horn, M.D. concurred, stating that injury from asbestos fiber occurs within minutes of the first inhalation, but that the disease continues to progress over many years. Dr. Horn believed Esters' exposure occurred while doing her mother's laundry and that her exposure dated from 1964, when she was nine years old.

8. *Initial Denial of Travelers' Motions and Writ Proceedings*

In August 2013, after reassignment to another judge, the trial court denied Traveler's motions, finding that there were triable issues of fact regarding the "necessarily decided" element of collateral estoppel.

Travelers filed a petition for a writ of mandate in the court of appeal to compel a grant of summary judgment in its favor. On August 28, 2014, Division Three of this court issued a *Palma* notice stating that the court was "considering the issuance of a peremptory writ of mandate in the first instance . . . directing the respondent court to hold

12

a new hearing on the two motions for summary judgment and/or summary adjudication filed by [Travelers] in view of our conclusion [that] there is no triable issue of material fact, with the result as a matter of law, Rhode Island law applies to the interpretation of the Travelers Insurance policies at issue in this lawsuit."[5]  In the body of the notice, tracking in summary form the arguments made by Travelers, the notice stated that "[i]t appear[ed] to this court" that Textron was collaterally and judicially estopped to "deny that Rhode Island law applies to the interpretation of the Travelers policies at issue in this case."

Before Division Three issued a substantive ruling, the case was assigned to a third judge, who requested additional briefing on Traveler's motions and set the matter for hearing.  On January 21, 2015, Division Three dismissed the writ petition as moot.[6]

---

[5]     When a writ petition is filed, the appellate court may (1) summarily deny the petition, (2) issue an alternative writ or an order to show cause pursuant to Code of Civil Procedure section 1087, or (3) issue a peremptory writ in the first instance, pursuant to section 1088 and the procedure set forth in *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178–179.  The accelerated *Palma* procedure dispenses with the issuance of an alternative writ, and with the requirement that the Court of Appeal afford an opportunity for formal briefing and oral argument before ordering that a peremptory writ issue.  (*Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1241.)

[6]     Pursuant to Textron's request for judicial notice, we take such notice of (1) the August 1, 2013 minute order taking the summary judgment motions under submission and Judge Khan's tentative ruling on the motions; and Division Three's notice of intent to grant peremptory writ of mandate in the first instance dated August 28, 2014.  We also take judicial notice, pursuant to Travelers' request, of this Court's docket in the writ proceeding, Division

13

9. *Trial Court Ruling at Issue in this Appeal*

On January 28, 2015, the trial court granted Travelers' motions for summary judgment and vacated the prior ruling denying the motions. The trial held that the prior proceeding in Rhode Island met all the elements for application of collateral estoppel: same parties and insurance policies, same issue, and a final ruling on the merits. Similarly, the trial court found Textron was judicially estopped because in the Rhode Island action it successfully took a position inconsistent with its position seeking coverage of the Esters action.

The trial court further found that a Rhode Island court would apply a manifestation trigger to a latent injury such as asbestos poisoning, citing *Eagle-Picher Industries, Inc. v. Liberty Mut. Ins. Co.* (1st Cir. 1982) 682 F.2d 12, which adopted a manifestation trigger of coverage for an asbestosis claim. Because Esters' disease was not diagnosable until 2010, after the end of the Travelers policies periods, the court concluded that Travelers had no duty to defend or to indemnify Textron. For the same reason, Travelers was entitled to reimbursement for its costs of defense and indemnity.

Thus, the trial court granted summary judgment for Travelers on Textron's declaratory relief complaint, on Textron's bad faith cross-complaint, and on Travelers' reimbursement cross-complaint for the

---

Three's order entered October 30, 2013 staying the underlying trial court action, and the order entered in the writ proceeding on January 21, 2015, dismissing the writ petition as moot. (Evid. Code, §§ 452, subd. (a), 459.)

cost of defending and settling the Esters action.  The trial court entered judgment accordingly.  Textron appealed, and we reverse.[7]

## DISCUSSION

Textron contends that the trial court erroneously applied collateral and judicial estoppel to find that Rhode Island's manifestation trigger rule applied to determine coverage of the Esters' action.  Further, Textron asserts that under the applicable California continuous trigger rule, there is a material factual dispute whether Esters' claim was an occurrence within the coverage period of the Textron policies.  As we explain, we agree.

---

[7]     Obviously, our resolution of this case is contrary to the view expressed in Division Three's *Palma* notice stating that Textron was collaterally and judicially estopped to argue Rhode Island law did not apply to interpret the Travelers policies.  That notice prompted the new hearing on Textron's motions which resulted in the trial court's ruling (consistent with the view expressed in the *Palma* notice) that Rhode Island law governed and Travelers was entitled to judgment as a matter of law.  It is unfortunate, to say the least, that judicial economy has not been well-served by this turn of events, and that the very able trial judge (Judge Mitchell Beckloff) will likely feel (and rightly so) a sense of judicial whiplash.  In explanation, we can only say that on full analysis of this appeal under relevant principles of issue preclusion and choice of law as applied to interpretation of multiple risk CGL policies insuring risks in different states (principles not considered in the *Palma* notice in the mooted writ proceeding), we respectfully disagree with the tentative views expressed by Division Three of this court, and conclude that Travelers was not entitled to judgment as a matter of law.

15

1. *Standard of Review*

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to the cause of action." (Code of Civ. Proc., § 437c, subd. (p)(1); *Aguilar, supra,* 25 Cal.4th at p. 850.) "In evaluating a grant of summary judgment, we review the record de novo, 'liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.'" (*Abed v. Western Dental Services, Inc.* (2018) 23 Cal.App.5th 726, 738.)

2. *Collateral Estoppel*

We first discuss whether collateral estoppel precludes Textron from seeking a ruling that California's continuous trigger rule applies to determine whether the Esters action constitutes a covered occurrence under the Travelers policies. We conclude it does not.

Collateral estoppel (more specifically known as "issue preclusion") prevents relitigation of previously decided issues, rather than causes of action. (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) It applies after (1) final adjudication of (2) an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party. (*Id.* at p. 327.) "The purposes of collateral estoppel are to prevent inconsistent

16

judgments that undermine the integrity of the judicial system, promote judicial economy by minimizing repetitive litigation, and protect litigants from harassment by vexatious litigation. [Citations.] Collateral estoppel is not an inflexible doctrine. Even if the minimal requirements for its application are satisfied, the doctrine should not be applied if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case." (*Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 97.)

For collateral estoppel to apply here, the key question is whether the identical issue was presented and decided between Textron and Travelers in the Rhode Island action.[8] Collateral estoppel applies only to issues that were truly litigated and decided between the parties in the former action. "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. [Citation.] . . . 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]'" (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511–512.) Although the focus is on the identity of the specific issue litigated and decided based on the facts presented, it has also been held that "[a]n issue decided in a prior proceeding establishes collateral estoppel even

---

[8]     As the Rhode Island litigation was settled and dismissed with prejudice, it was final for purposes of applying collateral estoppel. (See *Estate of Redfield* (2011) 193 Cal.App.4th 1526, 1533 [dismissal with prejudice following a settlement constitutes a final judgment on the merits].)

if some factual matters or legal theories that could have been presented *with respect to that issue* were not presented. [Citations.] A prior decision does not establish collateral estoppel, however, *on issues* that could have been raised and decided in the prior proceeding but were not. [Citations.]" (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1042–1043, italics added.) This "is not an easy rule to apply, for the term 'issue' as used in this connection is difficult to define, and the pleadings and proof in each case must be carefully scrutinized to determine whether a particular issue was raised even though some legal theory, argument or 'matter' relating to the issue was not expressly mentioned or asserted." (*Clark v. Lesher* (1956) 46 Cal.2d 874, 880–881.) Putting it as simply as we can, the factual predicate of the legal issue decided in the prior case must be sufficient to frame the identical legal issue in the current case, even if the current case involves other facts or legal theories that were not specifically raised in the prior case.

Here, application of collateral estoppel is further complicated by the nature of the issue as to which collateral estoppel is asserted. To be clear, that issue is not simply whether, in the Rhode Island coverage action, Textron sought and received a ruling that Rhode Island law applied to interpret *the same policy language* for personal injury claims under which it seeks coverage in California of the Esters action. That is certainly relevant, but not determinative. Rather, the determinative point is whether the Rhode Island ruling that Rhode Island law applied

18

to interpret the Travelers policies decided the identical *choice of law issue* presented here. It clearly did not.

When, as here, the parties' contract does not designate the law that governs, California uses the "government interest analysis" to determine choice of law, under which "the forum [state court] 'must search to find the proper law to apply based upon the interests of the litigants and the involved states.'" (*Offshore Rental Co. v. Continental Oil Co.* (1978) 22 Cal.3d 157, 161.) We will assume (without deciding) that Rhode Island's "interest analysis" is the substantial equivalent (though the parties have not specifically briefed that issue).[9]

The governmental interest analysis "involv[es] three steps: 'First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court

---

[9] As discussed in one of the Rhode Island Supreme Court decisions cited by Textron in its Rhode Island motion for summary adjudication, "years ago in *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917 (1968), it was decided that in negligence disputes involving a conflict in the laws of various states this court would no longer have an unswerving adherence to the principle which requires the application of the law of the jurisdiction where the injury occurred. Instead, any determination regarding the applicable law will be made after a consideration of several significant factors, one of which is the location where the injury occurred. The ultimate choice of law will depend, however, upon a determination regarding which jurisdiction had the most significant interest in the litigation. In this interest-weighing approach many factors are to be considered, including not only the place where the injury occurred, but, in addition, the place where the conduct causing the injury occurred, the domicile or residence of the litigants, and the place where the relationship, if any, between the litigants is centered." (*Blais v. Aetna Cas. & Sur. Co.* (R.I. 1987) 526 A.2d 854, 856.)

19

examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" [citation], and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."'" (*Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1202.)

Here, the specific legal issue is whether the Esters action presents a covered occurrence under the Textron policies. Factually, the Esters action involves an alleged occurrence of continuing personal injury (mesothelioma) suffered by a single California resident from exposure to asbestos in California, caused by Textron's activities in California. The specific conflict of law issue in this factual and legal context is whether the definition of a covered occurrence should be determined by: (1) California's continuous trigger rule, under which "if specified harm is caused by an included occurrence and results, at least in part, within the policy period, it perdures to all points of time at which some such harm results thereafter" (*Aerojet-General Corp. v. Transport Indemnity Co., supra,* 17 Cal.4th at p. 57); or (2) Rhode Island's manifestation trigger test, under which a covered occurrence exists "when the damage . . . manifests itself, . . . is discovered or, . . . in the exercise of reasonable diligence is discoverable." (*Textron, Inc. v. Aetna Cas. and Sur. Co., supra,* 754 A.2d at p. 746.)

20

Obviously, that specific issue—which trigger rule should apply to the Esters action—was not litigated and decided more than 24 years earlier in the Rhode Island action. Thus, the issue presented and decided in the Rhode Island action did not present "identical factual allegations" to those made in the instant coverage dispute. (*Hernandez v. City of Pomona, supra*, 46 Cal.4th at p. 512.) And although the "ultimate issue" or "disposition"—giving interpretive meaning to the term "occurrence" in the Travelers policies as applied to personal injury—may be identical, that does not create an identity of issues for collateral estoppel. (*Id.* at pp. 511–512.)[10]

Thus, the determination of identity of issues depends on an examination of the record of the Rhode Island action to determine whether, although the specific factual predicates are not the same, the factual predicate in the Rhode Island action was sufficient to create the identical choice of law issue presented here, even though some facts and theories present here were not involved in the Rhode Island proceeding.

Travelers' argument, at base, is that the instant case presents the same choice of law issue, because in both actions, Textron sought coverage under the same policy language for incidents of personal injury principally located in California. But, for many reasons, the argument does not fully consider the precise choice-of-law issue

---

[10] Textron argues that the covered claims in the Rhode Island action did not involve personal injury. However, in its operative complaint and in its motion for partial summary judgment, Textron described the claims, in part, as claims for personal injury. Nonetheless, whether the Rhode Island ruling qualifies for collateral estoppel does not turn on whether in Rhode Island Textron sought coverage of claims for personal injury.

21

presented in the Rhode Island case as compared to the choice of law issue presented in the instant case by the Esters action.

First, Textron brought the Rhode Island case against 49 insurance carriers (incorporated in 15 different states), seeking coverage under 258 policies for multiple occurrences of "property damage" and "personal injury" occurring in 19 different states, including California (but not Rhode Island). Textron's motion for partial summary judgment in the Rhode Island action identified *no* specific conflict between Rhode Island law and the law of the 19 other states, much less a specific conflict with California law. Indeed, it is questionable whether the specific conflict of law here—conflicting trigger tests to determine coverage of a claim of continuing or progressively deteriorating damage or injury—*could* have been identified. The Rhode Island ruling occurred in 1991, but the California Supreme Court did not adopt the continuous trigger test for third party claims of continuous or progressively deteriorating damage or injury until 1995, in *Montrose, supra*, 10 Cal.4th 645. Before that, as discussed in *Montrose,* 10 Cal.4th at pages 678–685, California law was unclear regarding whether the manifestation trigger or continuous trigger applied to continuous injury or damage. As the discussion in *Montrose* demonstrates, at the time of the Rhode Island ruling in 1991, one California appellate decision had adopted a "continuous occurrence" theory for continuing property damage. (*California Union Ins. Co. v. Landmark Ins. Co.* (1983) 145 Cal.App.3d 462, 476 [applying continuous occurrence analysis to successive coverage of third party claim of progressive property damage caused by water leakage].) But that analysis was criticized in a 1988

22

decision involving a first party claim. (*Home Ins. Co. v. Landmark Ins. Co.* (1988) 205 Cal.App.3d 1388, 1395 ["We also have concern that *California Union* misapplied three pre-manifestation cases to hold a postmanifestation carrier jointly and severally liable"].) And in the most recent appellate decision before the Rhode Island ruling, the same appellate court adopted a manifestation trigger for a third party claim for continuous property damage caused by construction defects, and rejected the continuous trigger analysis of *California Union.* (*Fireman's Fund Ins. Co. v. Aetna Casualty & Surety Co.* (1990) 223 Cal.App.3d 1621,1626–1628.) Thus, it is not at all apparent that a conflict in triggers of coverage existed between California and Rhode Island when the Rhode Island court ruled in 1991. Because the conflict did not necessarily exist (and certainly was not expressly identified by Textron or the Rhode Island court), it was not presented and decided as a choice of law issue in the Rhode Island action.

Second, even if there were a conflict in 1991 between California and Rhode Island's trigger rules, Textron identified no California interests to be balanced against Rhode Island's interests to choose which law to apply. Without identifying any conflict of law, Textron simply argued that under Rhode Island's "common-sense" interest-weighing test, Rhode Island had the most significant interest of any single state because: (1) Textron had maintained its principal place of business in Rhode Island since 1949; (2) its risk management department was located in Rhode Island; (3) premiums on insurance policies sold to Textron were paid from Rhode Island; and (4) insurance policies and all notices relating to insurance policies were delivered to

23

Textron's principal place of business in Rhode Island. But there was no mention of any California interests in applying its law to determine coverage of occurrences of personal injury in California. Thus, as far as the record of the Rhode Island action shows, no policy considerations favoring California were actually presented to the Rhode Island court.

Third, as shown by the "Information Summaries" attached to Textron's operative complaint in the Rhode Island action, all the occurrences, including those in California, involved some type of environmental contamination and resulting property damage from operations by Textron or its subsidiaries—property damage that might also have resulted in unspecified claims for personal injury. But the nature of the personal injuries—in particular, whether they were for progressive or continuing injury such as the mesothelioma—was never mentioned. However, the type of injury is an important component of the choice of law issue presented by the Esters action, as it is the focal point of the specific conflict of law presented.

Fourth, not surprisingly, given the choice of law issue as framed, the short written ruling issued by the Rhode Island court did not identify any relevant conflict of law between Rhode Island and any state, much less California; did not describe the nature of any alleged personal injury for which coverage was sought; and conducted no analysis of California's interests in applying its law to any of the personal injury occurrences in California.

Fifth, to amplify on the point that no California interests were raised as part of the choice of law balancing in Rhode Island, it is important to recognize that when considering which state's law applies

24

to covered occurrences under multi-risk, multi-state CGL policies such as the Travelers policies, there are controlling nuances in choice of law principles, none of which were raised or considered in the Rhode Island action.

Generally, "the relevant contacts to be considered in a dispute over the validity of a contract or the rights thereunder are set forth in section 188, subdivision (2) of the Restatement Second of Conflict of Laws: '(a) the place of contracting, [¶](b) the place of negotiation of the contract, [¶](c) the place of performance, [¶](d) the location of the subject matter of the contract, and [¶](e) the domicile, residence, nationality, place of incorporation and place of business of the parties. [¶] These contacts are to be evaluated according to their relative importance with respect to the particular issue.'" (*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.* (1993) 14 Cal.App.4th 637, 646 (*Stonewall*); see also *Dixon Mobile Homes, Inc. v. Walters* (1975) 48 Cal.App.3d 964, 972; *Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co.* (1980) 103 Cal.App.3d 198, 204–205.)

Insurance policies present a specific application of the governmental interest analysis. "Where . . . a casualty insurance contract is in dispute, particular importance is placed on the location of the subject matter of the contract, i.e. the location of the insured risk. [Citations.] 'The Restatement Second of Conflict of Laws section 193 states: "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the

25

particular issue, some other state has a more significant relationship. . . ." As the court explained in *Cunningham v. Equitable Life Assur. Soc. of U.S.* (2d Cir. 1981) 652 F.2d 306: "In contracts of casualty insurance, . . . the principal location of the insured risk is given particular emphasis in determining the choice of the applicable law. [Citation.] This is so because location has an intimate bearing upon the nature of the risk and the parties would naturally expect the local law of the state where the risk is to be principally located to apply. [Citations.] Moreover, the state where the insured risk will be principally located during the term of the policy has an interest in the determination of issues arising under the insurance contract." [Citation.]' [Citation.]" (*Stonewall, supra*, 14 Cal.App.4th at p. 646.)

In the case of a CGL policy that insures multiple risks in multiple states, such as the Travelers policies, the choice of law determination is made more complicated by a unique aspect: the same policy, and the same policy language, insures against multiple risks occurring at different times and in different states. As stated in *Stonewall,* "'[w]here a multiple risk policy insures against risks located in several states, it is likely the courts [of the various states] will view the transaction [for which coverage is sought] as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principal location of the particular risk involved.'" (*Stonewall, supra,* 14 Cal.App.4th at pp. 646–647; see also Rest.2d, Conflict of Laws, § 193, com. f.; 2 Witkin, Summary of Cal. Law (11th ed. 2017), Insurance, § 43, pp. 93–95.) As a result, when construed by courts in different states applying each state's law, "the same policy language may receive

26

different construction and application in different jurisdictions." (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 514.)

The decision in *Stonewall* is an instructive discussion of the choice of law in such a case. In *Stonewall,* a California jury awarded punitive damages against the insured, a Wisconsin corporation with manufacturing operations in California, based on an incident in which a California resident was injured when a battery manufactured and sold in California exploded in California. (*Stonewall, supra,* 14 Cal.App.4th at p. 640.) The insurers filed a declaratory relief action seeking a declaration that they were not required to pay exemplary damages under California law. The insured argued that Wisconsin law, which permitted indemnification for punitive damages, applied. (*Id.* at p. 641.) The court in *Stonewall* held that California law governed. The Court reasoned that "the record here supports the conclusion [that the insured] is a large corporation with worldwide operations and, more importantly, both [the insured] and its insurers carefully considered the complexity of the corporation's activities at the time the policies were issued. Under these circumstances we believe [the insured] and its insurers would reasonably expect not only that the corporation's liability to a third party might be governed by the law of a state with significant interests at stake, but that [the insured's] right to indemnity for such a claim might also be governed by that state's law. As suggested by Witkin and the Restatement, given the nature of the risks insured, this is a case where in reality [the insured] did not obtain a single policy which it could expect would be governed by the law of one state; rather, [the insured] obtained separate policies which insure

27

separate risks located in any number of states where the corporation does business." (*Id*. at p. 648.)

Under this approach, the court concluded that California's governmental interests as the location of the insured risk and in protecting its residents against tortfeasors outweighed Wisconsin's interest: "[T]he liability imposed grew out of severe injury suffered by a California resident while he was in California and caused by manufacturing and marketing activities which occurred exclusively in this state. It is difficult to imagine circumstances where California would have a greater interest in altering the future behavior of a defendant by compelling payment [of punitive damages] directly from the defendant rather than its insurers. [¶] In sum then California's rule applies here because it is the principal location of the risk involved, because application of California's rule is entirely consistent with Wisconsin's interest in protecting the reasonable expectations of its insured and because California has a significant interest in applying its rule." (*Stonewall, supra*, 14 Cal.App.4th at p. 649, fn. omitted.)

In the instant case, it is clear from the record that Textron is a large corporation with operations in many states, and has obtained many policies of insurance issued by many different insurers to cover its multi-state operations. It may be inferred that, as with the parties in *Stonewall,* the insured (Textron) and insurer (Travelers) "reasonably expect[ed] not only that the [insured's] liability to a third party might be governed by the law of a state with significant interests at stake, but that [the insured's] right to indemnity for such a claim might also be

28

governed by that state's law." (*Stonewall*, *supra*, 14 Cal.App.4th at p. 648.)

In the Esters action, the location of the insured risk is California, and only California. Under *Stonewall*, California's interest in applying its continuous trigger rule to interpret the definition of occurrence under the Travelers policies is compelling. But, as to any California personal injuries involved in the Rhode Island action, no analogous California interest was presented or considered. As we have stated, Travelers identified (and the court apparently considered) only Rhode Island's interests as the site of Textron's principal place of business and risk management department, and the site from which premiums were paid and the policies and notices were delivered. While these interests supported applying Rhode Island's law to occurrences of personal injury in the factual context of the Rhode Island action (258 policies covering occurrences in 19 different states), they pale in significance to California's interest in the factual context of the Esters action. As is apparent, California has an overriding interest in applying its continuous trigger rule to the Esters action (involving a continuing injury suffered by a California resident, caused by Textron's activities in California and only California) to ensure that there are adequate insurance proceeds available as compensation. Indeed, in its motion for summary judgment in the instant case, Travelers did not even contend that Rhode Island's interests would be more impaired than California's if Rhode Island's manifestation trigger rule were not applied.

In short, based on all these considerations, we conclude that in deciding to apply Rhode Island law in the Rhode Island action, the

29

Rhode Island court did not decide the identical choice of law issue regarding whether California or Rhode Islands' trigger rule should apply to the Ester action. Although the issues in Rhode Island and here involve personal injury claims and the interpretation of the same insurance policies, they do so in markedly different factual postures, requiring markedly different choice of law analysis. (See *Don King Productions, Inc. v. Douglas* (S.D.N.Y. 1990) 742 F.Supp. 741, 751 [choice of law issues appear generally unsuited for collateral estoppel effect, because "determinations of governing law are fact-based, resting, *inter alia*, upon discrete findings with respect to such matters as the contractual parties' citizenship, residence, place of contract negotiation, place of contract execution, contract subject matter, and contemplated or actual place of performance under an agreement"].) Thus, Textron is not collaterally estopped to seek a ruling that California's continuous trigger rule applies.

3. *Judicial Estoppel*

The trial court also ruled that Textron was judicially estopped to argue that any law other than Rhode Island law applied. Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or an earlier proceeding. (*Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 169.) Five factors determine whether judicial estoppel apply: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial proceedings; (3) the party was successful in asserting the first position (it was adopted by the tribunal); (4) the two positions are

30

totally inconsistent; and (5) the first position was not taken as the result of fraud, ignorance, or mistake. (*Ibid.*; *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 842.)

As should be obvious based on our holding that collateral estoppel does not apply, judicial estoppel also does not apply. The fundamental basis of the doctrine is that the party to be estopped was successful in asserting a position in a prior case that is totally inconsistent with its position in the current case. Given that the issue decided and presented in the Rhode Island action was not identical to the issue presented here, Textron's argument in the present case that California's continuous trigger rule applies is not inconsistent with the its argument that Rhode Island law applied in the Rhode Island action.

### 4. *Triable Issue of Fact*

Absent collateral or judicial estoppel, Travelers failed to show that Rhode Island law applies in the instant case. To persuade a California court to apply the law of another state, "the proponent of the other forum's laws must invoke the law of the foreign jurisdiction, show that it materially differs from California law, and demonstrate how applying that law will further the interest of the foreign jurisdiction. [Citation.] Otherwise, a California court will apply its own rules of decision." (*Garamendi v. Mission Ins. Co.* (2005) 131 Cal.App.4th 30, 41.)

As we have stated, Travelers made no attempt to prove under the governmental interest test that Rhode Island's interest would be more impaired than California's if California's continuous trigger (rather than Rhode Island's manifestation trigger) were applied. Indeed, it is

obvious that the more impaired interests would be California's. Thus, California law and the continuous trigger rule defining an occurrence governed determination of Travelers' summary judgment motions.

Textron produced expert medical evidence that mesothelioma is initiated by the first inhalation of asbestos fibers, and that the disease thereafter continues to progress over many years. Dr. Horn believed that Esters' asbestos exposure occurred while doing her mother's laundry, and that her exposure dated from 1964, when she was nine years old. The Travelers policies were in effect from January 1, 1966 to January 1, 1987, during the period of the progression of the disease as described by Dr. Horn. Thus, a triable issue of fact exists under California's continuous trigger whether the Esters action constitutes an occurrence within the policy periods of the Textron policies. We therefore reverse the grant of summary judgment for Travelers and remand for further proceedings.

//
//
//
//
//
//
//
//
//

32

**DISPOSITION**

The judgment of the superior court in favor of Travelers on Textron's the first amended complaint, on Textron's cross complaint for breach of contract and bad faith, and on Travelers cross-complaint for reimbursement, is reversed. On remand, the superior court shall enter an order denying Travelers' motions for summary judgment/ adjudication, and conduct further proceedings as appropriate. Textron shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

33